AO 106 (Rev. 04/10) Application for a Search Warrant                                              s/Daniel Gridley  06/08/2022

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

**FILED**
JUN 9 2022
CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. M-22-440-P
                                              )
A WHITE iPHONE WITH A PINK CASE, CURRENTLY )
LOCATED IN THE CUSTODY OF HOMELAND )
SECURITY INVESTIGATIONS )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Western_____ District of _____Oklahoma_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Sections | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Controlled Substances |

The application is based on these facts:
See attached Affidavit of Special Agent Ryder Burpo, Homeland Security Investigations (HSI), which is incorporated by reference herein.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ryder Burpo, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/9/22

_____
*Judge's signature*

City and state: OKLAHOMA CITY, OK

Gary M. Purcell, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT "A"
### Items to be searched

**Device 2.** White iphone with Pink case





## ATTACHMENT B

All records on the devices described in Attachment A that relate to violations of Title 21, U.S.C. §§ 841 and 846 including, but not limited to:

1. Lists of customers and related identifying information;

2. Types, amounts, and prices of controlled substances as well as dates, places, and amounts of specific transactions;

3. Any information related to sources of controlled substances (including names, addresses, phone numbers, emails, notes or any other identifying information);

4. Communications regarding controlled substance offenses;

5. All bank records, checks, credit card bills, account information, and other financial records;

6. Evidence related to the possession, use, storage, or purchase of any vehicles, vessels, or other items that could be used as a means of transporting controlled substances;

7. Evidence, including geolocation records, related to locations used as meeting places, places used to store proceeds, instrumentalities, controlled substances, firearms possessed or used in the furtherance of drug trafficking, or other contraband;

8. Phone call records (incoming, outgoing, missed calls), voicemail, text messages (mms/sms/picture/video/etc.), emails, video chats, direct messaging, encoded messaging, mobile applications, and all other forms of communication that could be utilized to plan and discuss the transportation, packaging, distribution, sale, or concealment of controlled substances or drug proceeds;

9. Evidence of user attribution showing who used or owned the **Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames, passwords, documents, and browsing history;

10. Any digital data or material including video, audio, and still photography, lists, notes, and other text data relating to the distribution of controlled substances; and

11. Call history, contact name and numbers, voice and text messages, emails, pictures, videos, and/or other electronic data relating to drug activity.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Ryder Burpo, being duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I have been employed as a Special Agent of the U.S. Department of Homeland Security, Homeland Security Investigations (HSI) since June 2019, and am currently assigned to Oklahoma City, Oklahoma. I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I have arrested, interviewed, and debriefed numerous individuals who have been involved and have personal knowledge of importing, transporting, and concealing controlled substances, as well as the amassing, spending, converting, transporting, distributing, laundering and concealing of proceeds from controlled substance trafficking and smuggling. I have testified in judicial proceedings concerning the prosecution for violations of laws related to the unlawful possession of firearms and smuggling and trafficking of contraband, including controlled substances. I have been the affiant of numerous search warrants, including warrants authorizing the search of electronic devices.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S. Code §§ 841 and 846 have been committed by Everardo Vargas and Anallely Sanchez Ceballos and other unidentified individuals.  There is also probable cause to believe that the information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses. Based on my training and experience, I know that individuals who are involved in criminal organizations maintain books, records, receipts, notes, ledgers, and other papers relating to their clients and associates.  Furthermore, based on my training and experience, I know that these individuals often utilize phones, computers, emails, text messages, and other computer-facilitated communication software to communicate and maintain contact with their clients and associates.

5.      Through my training and experience, I have become familiar with some of the methods by which illegal drugs are imported, distributed, and sold, as well as the means used by drug dealers to disguise the source and nature of their profits including money laundering and structuring schemes. I have also gained experience in the conducting of such investigations through attending mobile forensics training, financial investigations training, cyber-crimes investigations training, drug investigations training, seminars, and everyday work.  In light of this training and experience, I know the following:

      a.      I am aware of the methods in which drug couriers and distributors associated with Drug Trafficking Organizations (DTOs) often use electronic devices, to include but not limited to, computers, tablets, cell phones, and other electronic storage devices, to communicate and

2

      execute electronic transactions which can, in turn, create automatic records and documentation of the transactions;

b.   I am aware that that it is particularly common for individuals engaged in the sale and distribution of illegal narcotics to use electronic devices to track and document financial transactions;

c.   I am aware that individuals engaged in the sale and distribution of illegal narcotics will frequently keep contact information and other evidence of their financial dealings with DTOs on cellular phones, computers, tablets, and other storage devices and that they often keep such electronic devices on or near their person.

d.   I am also aware that individuals engaged in the sale and distribution of illegal narcotics will use cellular phones to further their financial businesses using digital communication, including, but not limited to, e-mail and instant messaging; and

e.   I am aware that to accomplish the overall goals of individuals engaged in the sale and distribution of illegal narcotics, participants often utilize banks, financial institutions, and their attendant services, which are routinely accomplished through the use of electronic devices like cellular phones that may be used in conjunction with other electronic devices and the Internet.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. This affidavit is made in support of an application for a warrant to search a white iPhone with a pink case hereinafter referenced as "Device 2." The Device is currently in secure evidence storage at HSI Oklahoma City, located at 3625 NW 56th St, Oklahoma City, OK.

7. The applied-for warrant would authorize the forensic examination of the device for the purpose of identifying electronically stored data particularly described in Attachment B.

## FACTUAL BACKGROUND

8. The United States is investigating Everardo Aguilar Vargas and Anallely Sanchez Ceballos ("VARGAS and SANCHEZ") for violations of 21 U.S. Code §§ 841 (Distribution of a Controlled Dangerous Substance) and 846 (Attempt and Conspiracy to Distribute Controlled Dangerous Substance).

9. On May 31, 2022, HSI Oklahoma City received a request for assistance from Oklahoma Bureau of Narcotics Agents. Agent Dallas Lang conducted a traffic stop on Interstate Highway 40 (I-40) and Cimmaron Road Eastbound in Canadian County, Oklahoma within the Western District of Oklahoma. Agent Lang stated that during the traffic stop, he discovered multiple bundles of suspected methamphetamine within the interior of the vehicle occupied by **Vargas** and **Sanchez**. **Vargas** was identified as the driver of the vehicle and was detained. HSI Agents met with Oklahoma Bureau of Narcotics agents at Oklahoma Bureau of Narcotics Headquarters.

10. I responded, along with Special Agent Ryan Browning, to the Oklahoma Bureau of Narcotics Headquarters. Agent Lang stated that at 6:45 p.m., he observed the Class C Cruise America RV, bearing Florida license plate NFYS71. Agent Lang observed the vehicle failing to maintain its lane in violation of Oklahoma law. The traffic violation and the traffic stop occurred in Canadian County, in the Western District of Oklahoma. Agent Lang stated that he approached the vehicle where he made contact with the driver, **Everardo Vargas**. **Vargas** presented a State of California Department of Motor Vehicles application for ID Renewal receipt with an address of 2720 7th St, Apartment B, Wasco, California, 93280.

11. Agent Lang informed **Vargas** of the reason for the stop and directed **Vargas** to have a seat in the front seat of his marked patrol vehicle. During this interaction, Agent Lang observed several suspicious physical cues exhibited by **Vargas**: appearing very nervous, voice quivering, and shaking hands. **Vargas** level of nervousness was excessive for a minor traffic violation resulting in a warning.

12. During the traffic stop, Agent Lang asked **Vargas** where he was coming from. **Vargas** stated that he was coming from Las Vegas, Nevada and gave a vague idea of his destination to Oklahoma, Texas, and possibly Arkansas looking for work as an oil driller.

13. While on the traffic stop, Agent Lang requested consent to search the vehicle. Vargas refused consent. Agent Lang and his certified narcotics canine, Yeko, then conducted a free air sniff of the vehicle. Yeko alerted to the presence of the odor of illegal narcotics within the RV.

14. Agent Lang and OBN Agent Clement searched the RV and found within the vehicle in the kitchen area behind cabinets that were screwed in to prevent access to it and in the dinette area underneath the padding, and underneath the fixed panel that was screwed into the seating areas multiple bundles of suspected methamphetamine, and a single bundle of suspected heroin.

15. A field test was conducted on the white powdery substance which produced a positive result for methamphetamine for a total weight of 45.8 kilograms of methamphetamine.

16. **Anallely Sanchez**, the wife of **Vargas**, and the three children present in the RV were taken to Oklahoma Bureau of Narcotics headquarters. The children were placed in a room next door as **Sanchez** spoke with agents. **Sanchez** was placed in a recorded interview room where I and SA Browning introduced ourselves to **Sanchez**. we advised her of her *Miranda* rights, reading verbatim from the form. **Sanchez** immediately invoked her right to an attorney and the children were placed back in the room with her.

17. **Vargas** was taken to the passenger seat of Agent Lang's vehicle, within the Oklahoma Bureau of narcotics headquarters parking lot, where SA Browning and I introduced ourselves to **Varga**. We advised him of his Miranda rights, reading verbatim from the form. **Vargas** signed his Miranda waiver form. When asked about the narcotics found in the vehicle, **Vargas** stated he had knowledge of the narcotics including their locations, and that he was going to be paid $5,000 to transport them. **Vargas** admitted the narcotics were destined for Arkansas. **Vargas** claimed his wife, **Sanchez**, had no involvement with the drugs.

18. After arriving at the HSI office, I and other HSI agents processed and photographed the seized evidence. The suspected methamphetamine was weighed and tested using the TruNarc presumptive system. The tests results were positive for the presence of methamphetamine and the weight exceeded 5,000 grams. We secured the drug evidence in the evidence vault.

19. Device 1, described as a Samsung Fold, was found by agents in **Vargas**'s hand. Device 2, described as a white iPhone in a pink case, was found by agents in **Sanchez**'s hand.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Cellular phones have the ability to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, access the Internet, and to use manufacturer installed, as well as downloaded, applications to conduct basic computing and data services. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

21. There is probable cause to believe that things that were once stored on **Device 2** may still be stored there, at least for the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a

7

        storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer or cellular device the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer or cellular phone's operating system may also keep a record of deleted data in a "swap" or "recovery."

    c.    Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

22.    *Forensic evidence.* As further described in **Attachment B**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **Device 2** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on **Device 2** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. File systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how that particular device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit the examination of the device consistent with the warrants. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

24. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25. Based on the above information, I respectfully submit there is probable cause to believe **Device 2** described in Attachment A contains evidence of violations of 21 U.S.C. §§ 841 and 846 among others. The items listed in Attachment B are evidence of these crimes, contraband, fruits of these crimes, or property that is or has been used as the means of committing the foregoing offenses as well as other items illegally possessed.

26. Therefore, I respectfully request that a search warrant be issued, authorizing the search of **Device 2** described in Attachment A, and the seizure of the items listed in Attachment B.

RYDER BURPO
Special Agent, HSI


Subscribed to and sworn before me on June 9, 2022.

GARY M. PURCELL
United States Magistrate Judge

## ATTACHMENT "A"
### Items to be searched

**Device 2.** White iphone with Pink case






## ATTACHMENT B

All records on the devices described in Attachment A that relate to violations of Title 21, U.S.C. §§ 841 and 846 including, but not limited to:

1. Lists of customers and related identifying information;

2. Types, amounts, and prices of controlled substances as well as dates, places, and amounts of specific transactions;

3. Any information related to sources of controlled substances (including names, addresses, phone numbers, emails, notes or any other identifying information);

4. Communications regarding controlled substance offenses;

5. All bank records, checks, credit card bills, account information, and other financial records;

6. Evidence related to the possession, use, storage, or purchase of any vehicles, vessels, or other items that could be used as a means of transporting controlled substances;

7. Evidence, including geolocation records, related to locations used as meeting places, places used to store proceeds, instrumentalities, controlled substances, firearms possessed or used in the furtherance of drug trafficking, or other contraband;

8. Phone call records (incoming, outgoing, missed calls), voicemail, text messages (mms/sms/picture/video/etc.), emails, video chats, direct messaging, encoded messaging, mobile applications, and all other forms of communication that could be utilized to plan and discuss the transportation, packaging, distribution, sale, or concealment of controlled substances or drug proceeds;

9. Evidence of user attribution showing who used or owned the **Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames, passwords, documents, and browsing history;

10. Any digital data or material including video, audio, and still photography, lists, notes, and other text data relating to the distribution of controlled substances; and

11. Call history, contact name and numbers, voice and text messages, emails, pictures, videos, and/or other electronic data relating to drug activity.